EDWARD S. GOODWIN ET AL. *vs.* MARINERS SAVINGS BANK.

First Judicial District, Hartford, May Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The defendant orally agreed by telephone to sell and the plaintiffs to buy, fifty shares of a certain stock at a stated price; shortly thereafter the defendant telephoned that it had but forty-five shares of the stock to deliver, and requested the plaintiffs to cover back five shares at the agreed price in the open market, which the plaintiffs did and so reported to the defendant, which expressed its satisfaction. A week later the defendant repudiated the transaction and the plaintiffs, who had at once resold the fifty shares bought of the defendant to one of their customers, brought suit to recover

the difference between the contract and the market price of the
stock, which had meanwhile risen rapidly. *Held*:—

1.   That inasmuch as there had been a constructive delivery by the de-
fendant to the plaintiffs of five shares purchased by them in the
open market pursuant to the defendant's direction, which the
plaintiffs had actually received and accepted in part performance
of the contract for fifty shares sued upon, the statute of frauds did
not bar a recovery by the plaintiffs for the nondelivery of the forty-
five shares.

2.   That the direction of the defendant to the plaintiffs to purchase
five of the fifty shares in the open market, was not an act in the
formation of the contract but one done in performance of it, and
not a purely verbal act since it created an agency.

Argued May 1st—decided June 1st, 1923.

ACTION to recover damages for the nondelivery of
shares of stock alleged to have been purchased by the
plaintiffs of the defendant and at once resold by them
to a customer, brought to and tried by the Superior
Court in Hartford County, *Haines, J.;* facts found
and judgment rendered for the plaintiffs for $1,371,
and appeal by the defendant. *No error.*

The material facts found are as follows: The plain-
tiffs are stock brokers doing business as partners in
Hartford. The defendant savings-bank was the owner
of certain shares of the capital stock of the Hartford-
Ætna National Bank of Hartford. On December 16th,
1921, one of the plaintiffs called up Mr. Harwood, the
treasurer of the bank, and after some conversation
about price told Harwood that he took Harwood's
order to sell fifty shares of Hartford-Ætna stock at
$215 net to the bank. Within a few minutes the plain-
tiffs sold the fifty shares of stock to a third party. A
few moments later Harwood called the plaintiffs by
telephone and stated that he was sorry, but the bank
had only forty-five shares of the stock to deliver, and
directed the plaintiffs to cover back five shares at
$215 in the open market, leaving forty-five shares to
be delivered. This the plaintiffs did and reported the

Goodwin *v.* Mariners Savings Bank.

fact by telephone to Harwood, who expressed his satisfaction. Shortly afterward another telephone call was received by the plaintiffs from Harwood, saying that the stock in question had been previously placed for sale with another firm of brokers, and that he found it had been already sold and that the bank could not deliver the forty-five shares. Harwood asked what should be done and the plaintiffs replied that it would be necessary to buy the stock in the open market, and asked for a price at which they could buy it. Harwood gave them a limit of $215 per share. These telephone conversations all occurred within the space of one hour. The plaintiffs attempted to execute the order to cover back the forty-five shares at $215, but the market price had risen rapidly, and they were unable to do so. Harwood declined to authorize its purchase at a higher figure, and failed in an attempt to secure the stock himself. The plaintiffs rendered several statements to the bank and made several demands for the delivery of the forty-five shares to which no replies were received until, on December 23d, Harwood absolutely repudiated the transaction. The plaintiffs then notified the bank of their intention to buy in the open market and, receiving no reply, bought forty-five shares at $241. At the close of the plaintiffs' testimony defendant moved for judgment as of nonsuit, on the ground that recovery was barred under the statute of frauds. The motion was denied, and after defendant's evidence the court gave judgment for the plaintiffs to recover the difference between the contract and the market price of forty-five shares.

*Charles B. Waller,* for the appellant (defendant).

*Richard H. Deming,* for the appellees (plaintiffs).

BEACH, J. It is not clear from the finding whether the plaintiffs were acting as brokers authorized to sell fifty shares of Hartford-Ætna stock for the account of the defendant, or as buyers of the stock on their own account; but as both parties on their briefs and in argument have treated the transaction described in the finding as evidencing an oral contract for the sale of the stock by defendant to plaintiffs, we accept that construction of the finding. Both parties also agree on their briefs that the appeal is based solely on the ground that recovery on the contract alleged and proved was barred by the statute of frauds. The appellant makes some claims for the correction of the finding, but they do not touch the findings which we regard as decisive. It is admitted that there was no memorandum signed by the defendant, and no partial payment is claimed. The question briefed and argued, is whether there was a partial performance by receipt and acceptance of a part of the stock by the buyer. We think it is quite clear that there was.

If the finding as to the first telephone conversation of December 16th stood alone, it might be difficult to discover in it an unequivocal assent of the defendant to sell; but the findings as to what was said and done shortly afterward make it clear that the defendant had agreed to sell fifty shares of Hartford-Ætna stock at $215 net. Harwood then reported by telephone that the defendant could deliver only forty-five shares, and directed the plaintiffs to cover back five shares by buying it in the open market at $215, leaving forty-five shares to be delivered. This the plaintiffs did. That was equivalent to an order to the plaintiffs as brokers to buy five shares for the defendant's account, and to treat the five shares so bought in partial delivery of the fifty shares sold, leaving the other forty-five shares to be delivered thereafter. The plaintiffs in

filling that order bought and paid for the five shares in their character as agents for the defendant, and received and accepted them in their character as buyers, as a part performance by the defendant of its contract to sell and deliver fifty shares.

The contract did not limit the defendant to the delivery of the particular certificates which it owned or represented that it owned. If the defendant, owning no Hartford-Ætna stock at all, had directed the plaintiffs as its brokers to go into the market and cover back for its account the whole fifty shares at $215, and the plaintiffs had done it, the contract would have been fully performed on both sides. If that had been done it could hardly be denied that the defendant had made a good delivery of the stock, and that the plaintiffs had actually received and accepted it. So, on this finding, the contract was performed as to five out of the fifty shares, and the practical effect is that the defendant has been discharged *pro tanto*, so that the judgment is for the difference between the contract price and the market price of forty-five shares only. It is quite clear, therefore, that the plaintiffs had actually received and accepted five shares out of the original fifty contracted for.

It is claimed that the direction by Harwood to cover back five shares was a purely verbal act which cannot take the case out of the statute of frauds. It was not, however, an act in the formation of the contract, but an act done in performance of it, and not purely a verbal act, because it created an agency and *qui facit per alium, facit per se.* This part of the transaction falls entirely outside of the statute of frauds, and it resulted in a constructive delivery of five shares of Hartford-Ætna stock by the defendant to the plaintiffs which the plaintiffs actually received and accepted in part performance of the contract sued on. It is there-

fore unnecessary to discuss the question of constructive acceptance and receipt which is elaborately presented on the briefs.

There is no error.

In this opinion the other judges concurred.